UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW JACHIM,

    Plaintiff,                                          Hon. Gordon J. Quist

v.                                                       Case No. 1:12-CV-322

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying in part and granting in part Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 33 years of age on his alleged disability onset date. (Tr. 118). He successfully completed high school as well as two years of college and worked previously as a carpenter. (Tr. 26, 42, 163-68).

Plaintiff applied for benefits on January 7, 2009, alleging that he had been disabled since June 30, 2008, due to degenerative disc disease. (Tr. 118-19, 146). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 72-115). On January 18, 2011, Plaintiff appeared before ALJ Paul Jones. (Tr. 37-70). In a written decision dated January 28, 2011, the ALJ determined that Plaintiff was disabled from October 3, 2008, through April 18, 2010, but not thereafter. (Tr. 20-31). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-6). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On November 3, 2008, Plaintiff was examined by Nurse Practitioner Teri Holwerda. (Tr. 246-48). Plaintiff reported that he had been experiencing low back pain since suffering a work related injury four years previously. (Tr. 246). Plaintiff "rate[d] his pain at a level 5." (Tr. 246). Plaintiff also "denie[d] radiation of the pain to the buttocks or lower extremities" and also "denie[d] weakness in the lower extremities." (Tr. 246). A physical examination revealed the following:

> MUSCULOSKELETAL: Full passive nonpainful range of motion of the hips, knees, and ankles bilaterally without evidence of instability. SPINE: On inspection shows that he is holding himself of to the right. He has no tenderness with palpation of the lumbar spine, PSIS,[1] or buttock regions. Trunk flexion is somewhat limited and aggravates his back pain. Extension is full and seems to relieve some of his back pain. NEUROLOGIC: Biceps, triceps, and brachioradialis reflexes are 1 to 2+ and symmetric. Scapulohumeral and pectorals are negative. Hoffmann's[2] is negative right and left. Knee and ankle jerks are 3+ and symmetric. Plantar responses are down going. He has 2-3 beats of clonus[3] right and left. Pinwheel testing reveals intact and symmetric sensation in bilateral lower extremities. Manual muscle testing reveals intact strength with the exception of a subtle 4/5 weakness in the right extensor hallucis longus, although the gluteus medius are 5/5 bilaterally. Seated straight leg raise is negative right and left. Supine straight leg raising is limited by hamstring tightness bilaterally and mildly positive for back pain right and left. Simultaneous leg raise while supine is negative for back pain. Reverse straight leg raise is negative.

---

[1] PSIS refers to the posterior superior iliac spine, the "hip bones located towards the back of the body." *PSIS*, available at http://medical-dictionary.thefreedictionary.com/PSIS (last visited on August 27, 2013).

[2] Hoffman's sign is an indicator of a number of neurological conditions including cervical spondylitis, other forms of spinal cord compression, and multiple sclerosis. *See* Hoffman's Sign, available at, http://www.mult-sclerosis.org/Hoffmanssign.html (last visited on August 27, 2013).

[3] Clonus refers to a "series of fast involuntary [muscle] contractions" which can be caused by "an imbalance of signals from the central nervous system." *Spasticity*, available at http://www.webmd.com/pain-management/pain-management-spasticity (last visited on August 22, 2013).

(Tr. 247). The nurse recommended that Plaintiff obtain an MRI and begin a course of physical therapy. (Tr. 248).

On November 13, 2008, Plaintiff participated in an MRI examination of his lumbar spine the results of which revealed "multilevel degenerative changes at levels T12 through L2, as well as to a greater degree, L4 through S1 where there are associated posterior disc protrusions [which] mildly efface the ventral thecal sac, and at the L5-S1 level, the proximal left S1 nerve root to a mild degree." (Tr. 250-51).

Treatment notes dated November 26, 2008, indicate that Plaintiff "has not started physical therapy," but "has been mostly laying around the house." (Tr. 245). Treatment notes dated February 19, 2009, indicate that Plaintiff was discharged from physical therapy for nonattendance. (Tr. 293). Specifically, the physical therapist reported that Plaintiff "was seen for [initial] evaluation only," but "did not return to therapy" thereafter. (Tr. 293).

On March 26, 2009, Plaintiff participated in a lumbar spine radionuclide bone scan the results of which were "normal." (Tr. 318).

On May 13, 2009, Plaintiff was again examined by Nurse Holwerda. (Tr. 308-09). Plaintiff reported that he "has daily low back pain that is at a 6 or 7, recently he had another 3 day flare where his pain is at a 10 out of 10." (Tr. 308). Plaintiff described his pain as "a sharp stabbing pain in the low back and to the right." (Tr. 308).

On May 20, 2009, Plaintiff participated in an MRI examination of his lumbar spine the results of which revealed the following:

> 1. Stable magnetic resonance scan of the lumbar spine, unchanged from 11/13/08. Degenerative disc disease is again identified at L4-5 and L5-S1.

5

2.  A bulging disc at L5-S1 probably comes in contact with the traversing left S1 rootlet. This is unchanged from the previous study. No significant canal stenosis or foraminal stenosis is identified.

(Tr. 316-17).

On May 20, 2009, Plaintiff participated in a lumbar diskography examination the results of which revealed:

1.  At L3-4, disc morphology is within normal limits. There is no findings of reproducible clinical pain at this level.

2.  At L4-5 and L5-S1, the disc morphology demonstrates extravasation of contrast material posteriorly at each level. There are associated decreased intervertebral disc spaced heights. At L4-5 and L5-S1, the patient reports reproducible clinic pain to the buttock regions bilaterally, 7/9 at L4-5 and 8/9 at L5-S1.

(Tr. 323-24).

On October 30, 2009, Plaintiff was examined by Dr. Gregory Graziano. (Tr. 327-28). Plaintiff reported that his back pain "has been progressively worsening and recently has caused occasional shooting pain down the right and left leg." (Tr. 327). A physical examination revealed the following:

He has intact sensation from L2 through S1 in the bilateral lower extremities. He has symmetric reflexes at the patella and Achilles in the bilateral lower extremities, no clonus. He has 5 out of 5 motor strength from L2 through S1 in the bilateral lower extremities. He has negative straight leg raise in the bilateral lower extremities. He has worsening of pain with forward bending.

(Tr. 327).

6

After examining Plaintiff and also reviewing the results of recent diagnostic testing, Dr. Graziano concluded as follows:

> 35-year-old male with degenerative disc disease causing debilitating pain at L4-L5 and L5-S1. Discogram is concordant. MRI confirms the pathology. We explained to him that he could continue nonoperative treatment as he is doing. If he would desire surgical intervention, we could perform a minimally invasive TLIF[4] at L4-L5, L5-S1 with posterior spinal fusion from L4 through S1. He will require 4 to 6 months off work after the surgery and will have a 25-pound weightlifting restriction afterwards. He would like to proceed with the surgery.

(Tr. 328).

On November 23, 2009, Dr. Graziano completed an assessment regarding Plaintiff's physical capabilities. (Tr. 325-26). The doctor reported that the Plaintiff was temporarily disabled, for a period of 6 to 12 months, pending upcoming back surgery. (Tr. 325). Specifically the doctor reported that Plaintiff was presently able to "sometimes" (defined as "continuously up to 2 hrs. or occasionally up to 6 hrs.") perform the following activities: (1) sit; (2) stand; (3) walk; (4) lift up to 10 pounds; (5) perform grasping activities with either upper extremity; and (6) climb 3 to 4 stairs. (Tr. 325). The doctor further reported that Plaintiff was presently unable to perform the following activities: (1) lift up to 25 pounds; (2) bend; (3) squat, crawl or kneel; (4) reach over his shoulder; (5) climb; and (6) engage in pushing or pulling activities. (Tr. 325).

---

[4] TLIF refers to transforaminal lumbar interbody fusion surgery, a "surgical technique to stabilize the spinal vertebra and the disc or shock absorber between the vertebra." Transforaminal Lumbar Interbody Fusion (TLIF) Back Surgery, available at http://www.spine-health.com/treatment/spinal-fusion/transforaminal-lumbar-interbody-fusion-tlif-back-surgery (last visited on August 27, 2013).

On December 17, 2009, Plaintiff underwent back surgery performed by Dr. Graziano. (Tr. 333-56). Specifically, Dr. Graziano performed a "minimally invasive L4-S1 posterior spinal fusion with left L4-L5, L5-S1 transforaminal interbody fusion." (Tr. 337).

On March 19, 2010, Dr. Graziano reported that Plaintiff was restricted from lifting more than 25 pounds. (Tr. 357). On March 23, 2010, Plaintiff reported that "he no longer has referral symptoms or stabbing pain since the surgery." (Tr. 364). Plaintiff reported that he was able to stand on his feet "for a few hours" and was "trying to walk 1/4 mile 3 times a day." (Tr. 364). Treatment notes dated April 22, 2010, indicate that Plaintiff "is making very good progress through physical therapy by demonstrating a significant improvement in [range of motion] and core stability." (Tr. 371). Plaintiff reported that "his back feels very good and he likes all of his exercises." (Tr. 371).

On June 18, 2010, Plaintiff was examined by Dr. Graziano. (Tr. 375). Plaintiff reported that "since surgery his pain has improved by 60-70%." (Tr. 375). The doctor noted that Plaintiff "is nearly upon completion of physical therapy and is doing quite well." (Tr. 375). Plaintiff reported that he was not experiencing numbness, tingling, weakness, or any pain in his legs. (Tr. 375). Plaintiff further reported that he "is pleased with results of the surgery" and only has "occasional use of Vicodin less than 2 times per week." (Tr. 375). A physical examination revealed the following:

> Posterior incisions appear well healed. No sign of erythema, edema, or drainage. No tenderness to palpation. Muscular strength, bilateral hip flexor, knee extensor, tibialis anterior, plantar flexor, extensor/flexor hallucis longus 5/5. He has intact sensation to light touch, bilateral lower extremities. Legs, negative for cyanosis or edema.

(Tr. 375). X-rays of Plaintiff's lumbar spine revealed "stable hardware between L4-S1 without any hardware failure." Dr. Graziano concluded as follows:

> The patient should continue low-impact aerobic exercise such as stationary bicycle, walking, elliptical trainer, or swimming. He should maintain permanent light duty restriction with a permanent 25-pound lifting restriction. The patient may also participate in Pilates. He is to avoid any nicotine. He will return to clinic for recheck in 6 months.

(Tr. 375).

On December 10, 2010, Plaintiff was examined by Dr. Graziano. (Tr. 377-78). Plaintiff reported that "he is very pleased with the results of surgery" and that "overall his pain is improved by 60%." (Tr. 377). X-rays of Plaintiff's lumbar spine revealed "stable hardware between L4 and S1 without any hardware failure" and "good bony fusion" at L4-L5 and L5-S1. (Tr. 377). A physical examination revealed the following:

> General, patient is a 35-year-old male, well-appearing, in no apparent distress. Posterior incisions appear well healed. No tenderness to palpation or erythema. Examination of bilateral lower extremities demonstrates bilateral 5 out of 5 hip flexion, knee extension, knee flexion, tibialis anterior, gastrocsoleus, EHL, FAL. He has sensation intact to light touch in the L2-S1 nerve distributions bilaterally. Patient's gait is normal. Patient is able to bend over and touch his toes without significant pain.

(Tr. 377). Dr. Graziano concluded as follows:

> At this time, patient should continue light activities. He will have a lifetime lifting restriction of 25 pounds and is cleared for light duty work only with a sit/stand option.

(Tr. 377).

On December 12, 2010, Dr. Graziano completed an assessment regarding Plaintiff's physical capabilities. (Tr. 367-68). The doctor reported that Plaintiff could "sometimes" (defined

9

as "1 to 2 hours in an 8-hour workday") perform the following activities: (1) sit; (2) stand; (3) walk; (4) lift up to 25 pounds; (5) reach over his shoulder; (6) perform grasping activities with either upper extremity; (7) perform climbing activities; and (8) climb stairs. (Tr. 367). The doctor reported that Plaintiff could "never" perform the following activities: (1) bend; (2) squat, crawl, or kneel; and (3) perform pushing or pulling activities. (Tr. 367). The doctor also reported that Plaintiff "would need a sit-stand option, as symptoms dictate, at will." (Tr. 367). The doctor further observed, however, that Plaintiff "would have serious limitations as to pace and concentration" and "would likely miss 3 days or more of work and be tardy 3 or more days per month." (Tr. 367).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[5] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional

---

[5] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from degenerative disc disease, a severe impairment that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 25-28).

With respect to Plaintiff's residual functional capacity, the ALJ determined that from October 3, 2008, through April 18, 2010, Plaintiff was able to perform various work-related activities, but "could not sustain work activities for a full 8-hour workday or 40 hour workweek." (Tr. 26). Accordingly, the ALJ concluded that Plaintiff was disabled from October 3, 2008, through April 18, 2010. (Tr. 26-28). The ALJ further determined, however, that beginning April 19, 2010, Plaintiff retained the capacity to perform work activities subject to the following limitations: (1) he

can lift 10 pounds frequently and 25 pounds occasionally; (2) during an 8-hour workday (with normal breaks), he can sit for 6 hours and stand/walk for 2 hours; (3) he requires a sit/stand option at will that does not require him to be off-task for more than ten percent of the time; (4) he cannot climb ladders, ropes, or scaffolds; (5) he can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps/stairs; (6) he can occasionally use his upper extremities to perform overhead work; (7) he cannot experience concentrated be exposure to humidity or temperature extremes; and (8) he cannot perform any pushing or pulling activities with his extremities. (Tr. 28).

The ALJ determined that Plaintiff could not perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Paul Delmar.

The vocational expert testified that there existed approximately 13,500 jobs in the regional economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 63-66). This represents a significant number of jobs. *See Born v. Sec'y of*

*Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that while Plaintiff was disabled between October 3, 2008, through April 18, 2010, Plaintiff's disability ended on April 19, 2010.

Plaintiff asserts a single issue on appeal, that the ALJ failed to accord sufficient weight to the opinions expressed by Dr. Graziano. As noted above, on December 12, 2010, approximately one year following Plaintiff's back surgery, Dr. Graziano completed an assessment regarding Plaintiff's physical capabilities. The doctor reported that Plaintiff could "sometimes" (defined as "1 to 2 hours in an 8-hour workday") perform the following activities: (1) sit; (2) stand; (3) walk; (4) lift up to 25 pounds; (5) reach over his shoulder; (6) perform grasping activities with either upper extremity; (7) perform climbing activities; and (8) climb stairs. The doctor reported that Plaintiff could "never": (1) bend; (2) squat, crawl, or kneel; and (3) perform pushing or pulling activities. The doctor also reported that Plaintiff required a sit/stand option. Dr. Graziano further reported, however, that Plaintiff "would have serious limitations as to pace and concentration" and "would likely miss 3 days or more of work and be tardy 3 or more days per month." Plaintiff asserts that such limitations are work-preclusive and that because Dr. Graziano was his treating physician, the ALJ was required to afford controlling weight to his opinion.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not

13

inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544. In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at 544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors relevant to her assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

The ALJ accorded "limited weight" to Dr. Graziano's December 12, 2010 opinion. (Tr. 30). As the ALJ noted, Plaintiff's back surgery was quite successful. As detailed above, following surgery Plaintiff made "very good progress" in physical therapy and exhibited "significant improvement" in range of motion and core stability. Several months after surgery, Plaintiff reported that "his backs feels very good." Plaintiff also reported that he was able to stand on his feet "for a few hours" and was "trying to walk 1/4 mile 3 times a day."

An examination conducted several months later, in June 2010, produced even more favorable results. Plaintiff reported that his pain had decreased "60-70" percent from pre-surgery level. X-rays of Plaintiff's back revealed good bony fusion and no evidence of instability. The doctor reported that Plaintiff "is doing quite well." As the ALJ accurately observed, "Dr. Graziano himself felt [Plaintiff] could bike, walk, swim and perform various exercises in June 2010." The doctor also contemporaneously reported that Plaintiff could perform light work subject to a 25 pound lifting restriction. As the ALJ noted, however, the doctor "mentioned nothing about needing multiple breaks or missing work in June 2010, or at any time before he completed the [December 2010] functional capacity form."

As the ALJ concluded, the evidence following Plaintiff's surgery, most notably Dr. Graziano's treatment notes and opinions, is inconsistent with the doctor's December 2010 opinion. As the ALJ stated, "[t]here is no medical basis for any such deterioration in [Plaintiff's] condition between June and December 2010." In sum, the ALJ articulated good reasons, supported by substantial evidence, for affording less than controlling weight to Dr. Graziano's opinions.

15

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: September 3, 2013            /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge